UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | | |
|---|---|---|
| KAMEI ANN DODDS, | ) | No. ED CV 14-01267-VBK |
| | ) | |
| Plaintiff, | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| v. | ) | |
| | ) | (Social Security Case) |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter is before the Court for review of the decision by the Commissioner of Social Security denying Plaintiff's application for disability benefits.  Pursuant to 28 U.S.C. §636(c), the parties have consented that the case may be handled by the Magistrate Judge.  The action arises under 42 U.S.C. §405(g), which authorizes the Court to enter judgment upon the pleadings and transcript of the record before the Commissioner.  The parties have filed the Joint Stipulation ("JS"), and the Commissioner has filed the certified Administrative Record ("AR").

Plaintiff raises the following issue:

1.   Whether the Administrative Law Judge ("ALJ") properly

considered if Plaintiff meets or equals Listing 1.03, or in the alternative, Listing 1.02.

(JS at 2-3.)


This Memorandum Opinion will constitute the Court's findings of fact and conclusions of law.  After reviewing the matter, the Court concludes that the decision of the Commissioner must be affirmed.


**I**

**THE ALJ PROPERLY CONSIDERED THE EVIDENCE AND DETERMINED THAT**

**PLAINTIFF DID NOT MEET OR EQUAL ANY LISTING**

Plaintiff sustained severe injuries in an automobile accident, and later applied for SSI, asserting an onset date of disability of February 27, 2009. After administrative denials, she requested and received a hearing before an ALJ, which occurred on January 9, 2013, at which time Plaintiff appeared with counsel, provided testimony, and the ALJ also took testimony from a vocational expert ("VE"). (AR 20-38.)

Following the hearing, the ALJ issued an unfavorable Decision. (AR 10-16.) The ALJ followed the familiar five-step sequential evaluation process (See 20 CFR § 416.920(a)) and in the course of that analysis, determined, in pertinent part, that Plaintiff has severe impairments of greater trochanteric bursitis involving the right hip, leg length discrepancy status post rodding of the right femur, an impingement syndrome involving the right shoulder, a right ankle sprain with Achilles tendinitis and status post internal fixation of the calcaneus. (AR 12.) The ALJ determined that Plaintiff does not have an impairment or combination of impairments that meet or

medically equal any of the Listings, and then determined Plaintiff's Residual Functional Capacity ("RFC") to perform light work with certain exertional limitations. (AR 12.) Relying on the testimony of the VE, and noting that Plaintiff does not have past relevant work, the ALJ made a Step Five determination that there are available jobs that Plaintiff can perform. Thus, a non-disability finding was made.

In Plaintiff's single issue, she asserts that the ALJ did not properly consider whether she meets or equals Listing 1.03, or in the alternative, 1.02. For the following reasons, the Court does not find merit in Plaintiff's issue, and determines that the ALJ's Decision will be affirmed.

Before turning to the ALJ's evaluation of the evidence, the Court will briefly review the requirements of Listing 1.00, entitled "Musculoskeletal System." The Listing requires that there be a "loss of function" (see 1.00B), and that is defined as follows under 1.00B.2.a in pertinent part as follows:

"Regardless of the cause(s) of a musculoskeletal impairment, functional loss for purposes of these listings is defined as the inability to ambulate effectively on a sustained basis for any reason, including pain associated with the underlying musculoskeletal impairment, or the inability to perform fine and gross movements effectively on a sustained basis for any reason, ..."

The Listing then goes on to define "What we mean by failure to ambulate effectively, under § 1.00B.2.b." This is stated as follows:

"(1) Definition. Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an

3

1   impairment(s) that interferes very seriously with the

2   individual's ability to independently initiate, sustain, or

3   complete activities. Ineffective ambulation is defined

4   generally as having insufficient lower extremity functioning

5   (see 1.00J) to permit independent ambulation without the use

6   a handheld assistive device(s) that limits the functioning

7   of both upper extremities. (Listing 1.05C is an exception to

8   this general definition because the individual has the use

9   of only one upper extremity due to amputation of a hand.)

10      (2) To ambulate effectively, individuals must be

11  capable of sustaining a reasonable walking pace of a

12  sufficient distance to be able to carry out activities of

13  daily living. They must have the ability to travel without

14  companion assistance to and from a place of employment or

15  school. Therefore, examples of ineffective ambulation

16  include, but are not limited to, the inability to walk

17  without the use a walker, two crutches or two canes, the

18  inability to walk a block at a reasonable pace on rough or

19  uneven surfaces, the inability to use standard public

20  transportation, the inability to carry out routine

21  ambulatory activities, such as shopping and banking, and the

22  inability to climb a few steps at a reasonable pace with use

23  of single hand rail. The ability to walk independently about

24  one's home without the use of assistive devices does not, in

25  and of itself, constitute effective ambulation." (Emphasis

26  added.)

27

28  Plaintiff complains that the ALJ's failure to even discuss either

4

Listing 1.02 or 1.03 constitutes error. It has been long established, however, that Plaintiff has the burden of proving that her severe impairments actually meet or equal a Listing. See 20 C.F.R. § 416.920a(4)(iii); Burch v. Barnhart, 400 F.3d 676, 683 (9th Cir. 2005). The ALJ must evaluate the evidence to determine whether a claimant meets or equals any Listings, but the Court can find no authority that an ALJ is required to cite to any particular Listing, particularly if a claimant does not do so, and indeed, case law simply requires that an ALJ must discuss and evaluate evidence that would be pertinent to his or her conclusion that a Listing is  not met or equaled in a particular case. See Lewis v. Apfel, 236 F.3d 503, 513 (9th Cir. 2001). The Court will address Plaintiff's assertion, which is repeated often in the JS, that because her RFC as determined by the ALJ includes the limitation that "she is unable to work on uneven terrain ..." this somehow equates to the requirement of Listing 1.00 which, as an example of ineffective ambulation, includes an inability to walk a block at a reasonable pace on rough or uneven surfaces. Plaintiff provides no authority to equate the requirement in the Listing of an inability to walk for a block on rough or uneven surfaces with an inability to work, on uneven terrain. Further, the hypothetical question posed to the VE by the ALJ included an inability to "work" on uneven terrain. In response, the VE identified available jobs, which the ALJ adopted in his Step Five finding. (AR 36-37, 15.) Plaintiff makes no assertion of Step Five error, effectively conceding that the identified jobs do not require a person to work on uneven terrain.

The ALJ did thoroughly examine the medical evidence, and articulated a summary of his evaluation in the Decision. The medical

evidence which the ALJ evaluated included Kaiser Permanente medical records which describe Plaintiff's motor vehicle accident and the surgeries which followed to correct bone fractures which Plaintiff had sustained to her leg, knee and arm. The post-surgical records indicate that she had good positioning and alignment of the fixed fractures and the hardware that was inserted. (AR 14, citing Exhibit ["Ex."] 2F.)

As the Court has noted, the definitions of ineffective ambulation in the Listing include an evaluation of whether an individual is capable of sustaining and carrying out activities of daily living ("ADL"). Here, the ALJ fully evaluated this issue, based on testimony provided by Plaintiff at the hearing, and the medical evidence in the record. As the ALJ noted, Plaintiff has demonstrated a capability to carry out a large range of ADL, including performing household chores, collecting and recycling bottles and cans, traveling by herself and using public transportation, and shopping in stores. (AR 14, 25-26, 33, 149, 151-52, 157, 159-61.) Ninth Circuit case law has cited such types of ADL as being compatible with a ability to perform some level of work activity, including work at the light level of exertion. See Thomas v. Barnhart, 278 F.3d 948, 958-59 (9th Cir. 2002).

The ALJ also relied upon a consultative examination ("CE") performed by a board certified orthopedist, Dr. Bernabe. (AR 13, 296-301.) Plaintiff told Dr. Bernabe that "She can do everything," and that she just tolerates the pain. (AR 297.) Dr. Bernabe performed exertional tests, noting that Plaintiff did not use an assistive device and could walk on her heels and toes, could squat 50%, had no difficulty getting out of a chair or on or off the examination table. (AR 298.) Dr. Bernabe documented a normal range of motion in Plaintiff's right hip and found that her left hip examination was

unremarkable. (AR 299.) He further documented normal five/five motor strength, sensation and reflexes in both of Plaintiff's lower extremities. (AR 300.) Based on his examination, Dr. Bernabe rendered an opinion that as to Plaintiff's limitations, she could perform the equivalent of light work, with occasional postural movements, pushing/pulling and agility, and had no medical need for an assistive device for ambulation. (AR 300-01.) The ALJ relied on this medical opinion in making his determinations. (AR 14.)

Further, a State Agency medical physician, Dr. Mazuryk, did consider the 1.00 musculoskeletal series Listings (AR 40-51) and determined that Plaintiff did not satisfy any of them. (AR 47, 52.) Dr. Mazuryk then assessed Plaintiff's RFC. A determination by an ALJ may properly place reliance on the findings of a non-examining physician, such as a State Agency medical consultant, if they are consistent with the evidence. (See 20 C.F.R. § 416.927(e)(2)(I).)

The Court is satisfied that Plaintiff has not demonstrated that she meets the requirements of either Listing 1.02 or 1.03.[1] Further, while Plaintiff makes an argument that her impairments and limitations equal the characteristics of one of these listed impairments, she has not made out an equivalence argument.

//

//

//

//

---

[1]    With regard to Listing 1.03, that Listing does not appear to be implicated in this case because it requires "reconstructive surgery or surgical arthrodesis" (fusion) of a major weight-bearing joint. Plaintiff does not qualify because she had not had such reconstructive surgery or arthrodesis performed on any of joints.

For the foregoing reasons, the Court determines that the ALJ's finding that Plaintiff failed to demonstrate that she meets or equals a Listing is supported by substantial evidence, and for that reason, the Court will affirm the finding and order that this matter be dismissed with prejudice.

**IT IS SO ORDERED.**


DATED: <u>February 24, 2015</u>          <u>                /s/                </u>
                                         VICTOR B. KENTON
                                         UNITED STATES MAGISTRATE JUDGE